UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

LYNN DAVIS,

        Plaintiff,

v.                                              Civ. No. 15-01107 MV/SCY

USA NUTRA LABS, a Georgia
Company, and GROUPON, INC.,
a Delaware Corporation,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Motion of Defendant USA Nutra Labs[1] ("USA Nutra") to Dismiss for Lack of Personal Jurisdiction and Memorandum in Support, filed February 12, 2016 [Doc. 22]. On June 17, 2016, Magistrate Judge Steven C. Yarbrough permitted discovery limited to the issue of personal jurisdiction, to be completed within seventy-five days, [Doc. 46]. The parties subsequently submitted supplemental briefs incorporating evidence obtained during discovery. [Docs. 56, 60, 61, 63, 64, 68, 72]. The Court, having considered the motion, briefs, relevant law, and being otherwise fully informed, finds that the motion is well taken and will be granted.

## BACKGROUND

The relevant allegations in this matter are as follows. Plaintiff Lynn Davis ("Plaintiff") is a resident of Bernalillo County, New Mexico. [Doc. 1 ¶ 1]. In December 2013, Plaintiff

---

[1] USA Nutra states in its Motion that it is improperly named in this case and is properly identified as "Private Label Nutraceuticals, LLC." [Doc. 22 at 1]. Unless USA Nutra moves to amend the caption of this matter, the Court continues to refer to the Defendant as "USA Nutra" but recognizes that any evidence concerning Private Label Nutraceuticals, LLC refers to the same defendant.

1

received email advertisements from Defendant Groupon promoting Garcinia Cambogia "as a safe and natural weight loss and fat-burning product containing hydroxycitric acid (HCA)." *Id.* ¶ 7. Plaintiff placed an order with Groupon, over the internet, for three bottles of Garcinia Cambogia, which was a three-month supply. *Id.* ¶ 9. Plaintiff began taking Garcinia Cambogia in late January or early February 2014, and followed the instructions on the label of the bottle. *Id.* ¶ 11. In March, Plaintiff began to feel ill and stopped taking the Garcinia Cambogia capsules. *Id.* ¶ 12. She was hospitalized and a blood test and biopsy revealed that Plaintiff "had nearly no liver function." *Id.* ¶ 18. Having been in allegedly good health months before, Plaintiff was in need of a liver transplant. *Id.* While waiting for a transplant at the Mayo Clinic Hospital in Phoenix, Arizona, the Clinic "examined all medications and supplements that Plaintiff had taken and determined that the Garcinia Cambogia . . . was the probable cause of her acute liver failure." *Id.* ¶ 20. Plaintiff received a liver transplant on June 24, 2014, and remains under medical care. *Id.* ¶ 21 and 23.

Plaintiff's Complaint, filed December 8, 2015, [Doc. 1], named USA Nutra as a defendant because the bottles of Garcinia Cambogia that she purchased from Groupon bore a label indicating that the product may have been manufactured by USA Nutra. [Docs. 1 ¶ 26; 22 at 2]. The Complaint alleges that "[t]he Garcinia Cambogia capsules were unreasonably dangerous, defective in design and manufacture and the proximate cause of Plaintiff's severe injuries and damages." [Docs 1. ¶ 30; 34 at 3]. USA Nutra is incorporated and has its principle place of business in Georgia. [Docs. 1 ¶ 1; 22 at 3]. USA Nutra asserts, and Plaintiff does not dispute, that it is not registered to do business in New Mexico. It has no registered agent, "bank accounts, officers, stores, employees, agents or property in New Mexico, and [it] does not use the services of any manufacturer in New Mexico." [Doc. 22 at 3]. "As for USA

2

Nutra's advertising and sales efforts, USA Nutra has never sent corporate representatives or agents to New Mexico to solicit business; it has never attended a trade show in New Mexico; and it does not direct any advertising towards the citizens of New Mexico, to include its websites." *Id.* at 3. USA Nutra further asserts that it does not "specifically direct" its website towards citizens of New Mexico, and USA Nutra has only made three sales to customers in New Mexico, totaling $175.83 and representing approximately 0.193% of USA Nutra's gross sales from 2010 to 2014. *Id.* at 3–4.

In its motion to dismiss, filed on February 12, 2016, [Doc. 22], USA Nutra states that it "did not manufacture the Garcinia Cambogia product in question, but rather had the product manufactured for it by another entity outside of New Mexico." [Doc. 22 at 2–3]. USA Nutra nevertheless acknowledges that "it was in the supply chain of the Garcinia Cambogia product." *Id.* at 3 n.2.

In her Response, Plaintiff underscores the allegation that "Nutra Labs expected Groupon to advertise, market, distribute and sell the Garcinia Cambogia that it manufactured." [Docs. 1 ¶ 28; 34 at 3]. Pursuant to this and similar allegations, Plaintiff asked that the Court order discovery on the issue of personal jurisdiction. [Doc. 34 at 16–19]. On June 17, 2016, Magistrate Judge Steven C. Yarbrough permitted discovery limited to the issue of personal jurisdiction, to be completed within seventy-five days, [Doc. 46]. Plaintiff issued interrogatories and deposed Bjarte Rene, CEO and President of Private Label Nutraceuticals, LLC, or USA Nutra. *See, e.g.*, Docs. 61-1, 63-1, 64-1, 64-2. The parties' supplemental briefs revealed the following additional information. First, Groupon had three separate sales agreements related to Garcinia Cambogia: an agreement with DC 1 of Coral Gables LLC ("Coral Gables") "in relation to the sale of Garcinia Cambogia bearing the USA Nutra Labs label," an

3

agreement with Private Label Nutraceuticals, LLC (i.e. USA Nutra) to sell a product called TrimEtab Tri-Formula by Slimworx (with a label stating that the product contained Garcinia Cambogia), and an agreement with Slimworx in relation to the sale of a product called Garcinia Cambogia (which, the Court presumes, did not bear the USA Nutra Labs label). [Doc. 61 at 1 (citing Doc. 61-1 at 2–3)]. Groupon also stated in its Answers to Plaintiff's First Set of Interrogatories that "in the last five years, Groupon customers in New Mexico have purchased 1,314 bottles of Garcinia Cambogia, bearing the USA Nutra Labs label corresponding to 432 orders for that product" and that "in the last five years, Groupon customers in New Mexico have purchased 1,339 bottles of Garcinia Cambogia bearing the USA Nutra Labs label or TrimEtab Tri-Formula by Slimworx, corresponding to a total of 441 orders for those two products." *Id.* at 2 (citing Doc. 61-1 at 2–3).

Second, discovery revealed that there was no agreement between USA Nutra and Coral Gables to resell or distribute Garcinia Cambogia in New Mexico. [Doc. 63 at 3, (citing Doc. 63-1 at 67–71)]. USA Nutra, or Private Label Nutraceuticals, LLC, sold Garcinia Cambogia bearing the USA Nutra Labs label to Coral Gables, who then sold the product to Groupon. [Doc. 64 at 3]. Plaintiff still does not know the identity of the manufacturer of the Garcinia Cambogia product she used. *Id.* The Court notes that conspicuously absent from all the above is any additional information about the terms of the alleged agreement between USA Nutra and Coral Gables.[2]

---

[2] On October 11, 2016, Plaintiff submitted a Second Notice of Supplemental Evidence in Support of Plaintiff's Response to USA Nutra Labs' Motion to Dismiss, [Doc. 68]. In this Notice, Plaintiff raises the existence of another case against Private Label Nutraceuticals in California state court, in which an employee of Private Label Nutraceuticals stated in a declaration that USA Nutra was in the business of manufacturing and was aware that its products were being sold on a nationwide basis, including in New Mexico. *Id.* at 3–5. USA Nutra argues in response that this submission should be disregarded because it violates Local Rule 7.8 in that it contains supplemental *evidence* and not supplemental authority, and because Plaintiff should have instead sought leave to file

4

## **LEGAL STANDARD**

Motions to dismiss brought under Federal Rule of Civil Procedure 12(b)(2) test a plaintiff's theory of personal jurisdiction as well as the facts supporting personal jurisdiction. The Rule 12(b)(2) standard governing a motion to dismiss for lack of personal jurisdiction is well established. When a defendant challenges the court's jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction exists. *See McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936); *Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir. 1995) (citations omitted). In the preliminary stages of litigation, this burden is "light," and prior to trial a "plaintiff is only required to establish a prima facie showing of [personal] jurisdiction." *Doe v. Nat'l Med. Serv.,* 974 F.2d 143, 145 (10th Cir. 1992). The plaintiff may make the required prima facie showing by coming forward with facts, via affidavit or other written materials, that would support jurisdiction over the defendant if true. *See OMI Holdings v. Royal Ins. Co.,* 149 F.3d 1086, 1091 (10th Cir. 1998). Only the well-pled facts of a plaintiff's complaint, however, as opposed to mere conclusory allegations in pleadings or other materials, must be accepted as true. *See Ten Mile Indus. Park v. W. Plains Serv. Corp.,* 810 F.2d 1518, 1524 (10th Cir. 1987); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,* 514 F.3d 1063, 1070 (10th Cir. 2008).

---

a surreply under Local Rule 7.4(b). [Doc. 72 at 2 (citing D.N.M.LR-Civ. 7.8, 7.4(b))]. The Court agrees. With respect to the arguments Plaintiff made in this submission, [Doc. 68 at 6–11], Plaintiff should have sought leave from the Court to file a surreply, and the Court will not consider these arguments. *See* D.N.M.LR-Civ. 7.4(b) ("The filing of a surreply requires the leave of the Court."). With respect to the proffered evidence, [Doc. 68 at 2–5], Plaintiff should have moved for leave from the Court to submit supplemental evidence, outlining the relevance of the proposed evidence before submitting it. *See, e.g., Bell v. Board of Educ. of Albuquerque Public Schools,* 2008 WL 6020022 (D.N.M. Aug. 27, 2008) (granting in part motion for leave to present supplemental evidence, limiting supplemental evidence to stipulated facts). However, the Court notes that, as USA Nutra points out, the California case involved label claims, making the employee's statements regarding who manufactured the products ambiguous, as the issue of was not relevant in that case. [Doc. 72 at 3]. Furthermore, the statements cited by Plaintiff only establish that Private Label Nutraceutical's products were sold nationwide, which, as the Court discusses below, does not necessarily indicate that USA Nutra specifically targeted New Mexico. [Doc. 72 at 3–4]. Accordingly, the Court concludes that Plaintiff's attempted submission of supplemental evidence regarding the California state court case against USA Nutra is both procedurally improper and factually irrelevant.

Moreover, a plaintiff's jurisdictional allegations are not automatically accepted as true when contradicted by affidavit, although if the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor. *See Wenz,* 55 F.3d at 1505.

## DISCUSSION

The Fourteenth Amendment's Due Process Clause requires that a defendant be subject to a court's personal jurisdiction before a judgment can be rendered against it. *See World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 291 (1980). "To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state *and* that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1074 (10th Cir. 1995) (citation omitted). In New Mexico, a federal court has personal jurisdiction over a nonresident defendant only to the extent that the state's long-arm statute permits. *See Fid. & Cas. Co. v. Philadelphia Resins. Corp.,* 766 F.2d 440, 442 (10th Cir. 1985), *cert. denied,* 474 U.S. 1082 (1986). New Mexico's long-arm statute, however, "extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible," such that jurisdiction is authorized by the long-arm statute only if it is permitted under the Due Process Clause. *Tercero v. Roman Catholic Diocese,* 48 P.3d 50, 54 (N.M. 2002) (citation omitted); *see also Trujillo v. Williams,* 465 F.3d 1210, 1217 (10th Cir. 2006) (citation omitted).

The Fourteenth Amendment's Due Process Clause requires that for a court to assert personal jurisdiction over a defendant, the defendant must have (1) sufficient "minimum contacts" with the forum state (2) such that subjecting the defendant to the court's jurisdiction will not offend traditional conceptions of fair play and substantial justice. *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (citation omitted). The "defendant's conduct and connection with the forum

State [must be] such that [the defendant] should reasonably anticipate being haled into court there." *World–Wide Volkswagen,* 444 U.S. at 297.

As discussed below, the Court finds that it cannot properly exercise personal jurisdiction because USA Nutra lacks sufficient minimum contacts with New Mexico. However, although the parties did not fully brief the second step of the due process analysis, the Court notes that traditional conceptions of fair play and substantial justice weigh in favor of exercising personal jurisdiction over USA Nutra. Accordingly, although bound by precedent regarding requisite minimum contacts, the Court echoes the concern expressed in similar cases that the current framework is ill suited for modern products liability cases.

### I. Plaintiff Fails to Show that Defendant USA Nutra Has the Requisite Minimum Contacts with New Mexico.

A plaintiff may satisfy the "minimum contacts" standard arising under the Due Process Clause by making a prima facie showing that the court may exercise either general or specific jurisdiction over the defendant. General jurisdiction requires a plaintiff to demonstrate that a defendant's contacts with the forum state were "so continuous and systematic as to render it essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S.Ct. 2846, 2851 (2011); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415 (1984); *OMI Holdings,* 149 F.3d at 1090–91; *Fabara v. GoFit, LLC,* 308 F.R.D. 380, 401 (D.N.M. 2015). Specific jurisdiction requires a plaintiff to show that (1) a defendant has "purposefully avail[ed itself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws," and (2) that "the litigation results from alleged injuries that arise out of or relate to those activities." *OMI Holdings,* 149 F.3d at 1090–91 (citing *Burger King Corp. v. Rudzewiczi,* 471 U.S. 462, 472 (1985)); *see also Trierweiler v. Croxton &*

*Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996). The actions by the defendant *itself* must have created the substantial connection with the forum. *See OMI Holdings*, 149 F.3d at 1090–91 (the injury must arise out of "actions by the defendant *himself* that create a substantial connection with the forum state") (quoting *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 109 (1987)). Binding Tenth Circuit precedent provides that "mere foreseeability" is not enough to establish the purposeful availment requirement for personal jurisdiction, and that a plaintiff "must establish . . . not only that defendants foresaw (or knew) that the effects of their conduct would be felt in the forum state, but also that defendants undertook intentional actions that were expressly aimed at that forum state." *Dudnikov*, 514 F.3d at 1077; *see also Lopez v. Delta Int'l. Machinery Corp.*, 2016 WL 1408152, at *7 (D.N.M. Mar. 15, 2016) (quoting same).

Plaintiff in this case argues that the Court has specific jurisdiction over USA Nutra because USA Nutra "placed Garcinia Cambogia into the stream of commerce, causing injury to Ms. Davis." [Doc. 34 at 7]. The Court therefore limits its analysis to specific jurisdiction and finds that USA Nutra's minimum contacts with New Mexico are insufficient to warrant a finding of specific jurisdiction. Accordingly, this Court does not have personal jurisdiction over USA Nutra and must dismiss Plaintiff's claims against it.

Plaintiff argues that the Court should adopt the view of the New Mexico Court of Appeals in *Sproul v. Rob & Charles, Inc.*, 304 P.3d 18, 28–9 (N.M. Ct. App. 2012) (relying on *World-Wide Volkswagen* in holding that specific personal jurisdiction does not require a "manufacturer [defendant] to direct activities specifically at the forum state"). [Doc. 34 at 6]. The Court rejects this argument. First, *Sproul* is not binding on this Court. Although Plaintiff correctly asserts that "in a diversity action, personal jurisdiction is determined by the law of the forum state," [Doc. 34 at 6], New Mexico's long-arm statute only confers personal jurisdiction to

8

the extent permitted under the Due Process Clause. *See Tercero*, 48 P.3d at 54; *Trujillo*, 465 F.3d at 1217. Furthermore, the question of "whether minimum contacts exist to satisfy due process under the federal constitution" is a federal question determined by the law of this District and the Tenth Circuit. *See, e.g., Raffile v. Exec. Aircraft Maintenance*, 831 F.Supp.2d 1261, 1270 (D.N.M. 2011).

Second, Supreme Court and Tenth Circuit precedent has long since clarified the rule in *World-Wide Volkswagen* such that Plaintiff's "pure stream of commerce" theory is no longer viable. Plaintiff must show that USA Nutra carried out certain specific actions to direct sales of their Garcinia Cambogia product to New Mexico. *See Asahi Metal Industry Co.*, 480 U.S. 102 at 112 (specific jurisdiction may lie over a foreign defendant that places a product into the "stream of commerce" while also "designing the product for the market in the forum State . . . or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State").

In *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 877 (2011), the Supreme Court sought to clarify "decades-old questions left open in *Asahi*" and held that a New Jersey court did not have specific personal jurisdiction over a foreign manufacturer that did not engage in conduct purposefully directed at New Jersey. Plaintiff worker injured his hand using a metal-shearing machine and brought a products liability suit against the foreign manufacturer, who sold the machines to a U.S. distributor (with "no allegation that the distributor was under [the manufacturer's] control"), attended conventions to advertise the machines alongside the distributor, but sold no more than four machines in New Jersey. *Id.* at 878. In a plurality opinion written by Justice Kennedy, the Court held that "[i]n products-liability cases like this one, it is the defendant's purposeful availment that makes jurisdiction consistent with 'traditional notions of fair play and substantial justice.'" *Id.* at 880 (quoting *Int'l Shoe*). In particular, "[t]he

9

defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." *Id.* at 882.

Here, the relevant allegations fail to make a prima facie showing that USA Nutra purposefully availed itself to doing business in New Mexico. Because Plaintiff purchased the Garcinia Cambogia from Groupon and not from USA Nutra's website, specific personal jurisdiction must pertain to USA Nutra's relationship to Groupon. *See OMI Holdings*, 149 F.3d at 1090–91 (requiring a nexus between the alleged injuries and defendant's purposeful activities in the forum state). Furthermore, the injury must arise out of "actions by the defendant *himself* that create a substantial connection with the forum state." *Id.* at 1091. The Garcinia Cambogia bearing the USA Nutra Labs label, which Plaintiff bought from Groupon, was sold by USA Nutra first to Coral Gables, who then sold it to Groupon. [Doc. 64 at 3]. Accordingly, the Court must limit its analysis of specific personal jurisdiction to USA Nutra's relationship with Coral Gables. However, conspicuously absent from both the Complaint and the submissions incorporating the parties' discovery on this issue is any information about the agreement between USA Nutra and Coral Gables, other than the assertion that there was no express agreement to target sales in New Mexico. [Doc. 63 at 3, (citing Doc. 63-1 at 67–71)].

Like the defendant in *J. McIntyre*, who allegedly had no control over its distributor, the record in this case fails to address whether USA Nutra had any control over its distributor, Coral Gables. Without further information regarding the relationship between USA Nutra and Coral Gables, this Court is unable to find that USA Nutra took specific intentional actions amounting to a purposeful availment to doing business in New Mexico. Accordingly, the Court cannot have personal jurisdiction over USA Nutra purely on the basis that it put products into the stream

10

of commerce with the intention that they be sold generally. Plaintiff has failed to make a prima facie showing that USA Nutra "undertook intentional actions that were expressly aimed" at New Mexico. *Dudnikov*, 514 F.3d at 1077. Because USA Nutra lacks the requisite minimum contacts with New Mexico, this Court cannot properly exercise personal jurisdiction over USA Nutra and all claims against it must be dismissed.

## II. Exercising Personal Jurisdiction Over USA Nutra Would Not Offend Traditional Notions of Fair Play and Substantial Justice.

Because the Court finds that USA Nutra lacks minimum contacts with New Mexico, it is not necessary to proceed to the second step of the due process analysis. However, the Court nevertheless considers whether exercising personal jurisdiction would offend traditional notions of fair play and substantial justice, in order to demonstrate that the framework for establishing minimum contacts is ill suited to modern products liability cases.

If the defendant has minimum contacts with the forum state, the defendant has the burden of "present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Dudnikov*, 514 F.3d at 1078 (internal quotation marks omitted). This reasonableness analysis requires weighing the following five factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

*Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1279–80 (10th Cir. 2005) (internal quotation marks omitted). The Court concludes that the balance of these factors, if USA Nutra had minimum contacts with New Mexico, would weigh in favor of exercising jurisdiction.

In its Reply, USA Nutra admits that the first, second, and third factors weigh in favor of it being subject to personal jurisdiction in New Mexico, and does not address the fourth and fifth factors. [Doc. 40 at 8–9]. Regarding the fourth factor, the interests of the interstate judicial system, "[k]ey to this inquiry are the location of the witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *TH Agric. & Nutrition, LLC v. Ace European Grp., Ltd.*, 488 F.3d 1282 at 1296 (10th Cir. 2007) (internal quotation marks omitted). Neither party addressed these considerations, so the Court will not attempt to do so now except to note that the location of witnesses in this case probably is neutral, as Plaintiff became ill in New Mexico but was later treated in Arizona, and it remains unknown who manufactured the product and where. Regarding the fifth factor, the shared interests of states in their social policies, Plaintiff argues that all states have a shared interest in preventing further harm from a dangerous product. The Court agrees. Therefore, with three factors stipulated to weigh in favor of Plaintiff, along with the shared states' policy interests likely weighing in favor of Plaintiff, the Court concludes that if USA Nutra had the requisite minimum contacts with New Mexico, exercising jurisdiction likely would not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co.*, 326 U.S. at 316.

### III. Final Remarks

In *Fabara v. GoFit, LLC*, Judge Browning similarly found that the defendant lacked minimum contacts but that the reasonableness factors weighed in favor of finding jurisdiction. 308 F.R.D. at 409. In so holding, Judge Browning made the comment that "the traditional general and specific personal jurisdiction doctrines may need to be updated." *Id.* Indeed, when it comes to product liability cases involving internet purchases, the current framework poses substantial ambiguity. In *J. McIntyre*, Justice Breyer wrote in a concurring opinion that the plurality failed to

address situations where "a company consigns the products through an intermediary (say, Amazon.com) who then receives and fulfills the orders," *J. McIntyre Machinery, Ltd.*, 564 U.S. at 890, noting that "manufacturers come in many shapes and sizes" in their ability to litigate in a particular state. *Id.* at 892. Accordingly, the *McIntyre* Court did not reach a majority agreement on the nature of the requisite purposeful availment to confer specific jurisdiction over an out of state defendant. In light of this ambiguity, Judge Browning rightfully made the following commentary in *Fabara*:

> In the twenty-first century, many companies do not target a specific state or region; they target the entire United States. They formulate national marketing, distribution, and production strategies. They hire national insurance companies to pay their legal fees. It seems incongruous to allow a company to benefit from nationwide sales while limiting consumers' suits to the company's state of incorporate or principal place of business. If the ultimate aim of due process is fairness, it is unclear why the nation should shift the burden of litigating these cases from national corporations—which are more than able to defend against lawsuits in any state in the country—to consumers, for whom litigating a case across the country is often cost-prohibitive. A more pragmatic approach to personal jurisdiction would recognize these trends.

308 F.R.D. at 410. This Court agrees with this plea for a new approach, and regrets that the allegations in the present case are silent as to the specific nature of USA Nutra's agreement to have its Garcinia Cambogia product sold through Coral Gables. Without specific evidence regarding this relationship, the Court is unable to find specific intention on the part of USA Nutra that might fit the above profile of a defendant who insulates itself from specifically targeting any particular state, but who nevertheless intentionally adopts explicit strategies for nationwide sales.

In sum, because Plaintiff fails to make a prima facie showing of the requisite minimum contacts, the Court cannot properly exercise personal jurisdiction over USA Nutra. Specifically, Plaintiff has not sufficiently alleged or uncovered through discovery any indication

that USA Nutra's agreement with Coral Gables showed intentional acts on the part of USA Nutra to have the Garcinia Cambogia product sold in New Mexico. Although the fairness factors weigh heavily in favor of exercising jurisdiction, the Court is bound by the Supreme Court's present articulation of minimum contacts under the Due Process Clause. Had Plaintiff presented more specific information about how USA Nutra sought to sell the Garcinia Cambogia product through Coral Gables, this Court might have reached a different outcome.

## CONCLUSION

For the foregoing reasons, IT THEREFORE IS ORDERED that USA Nutra's Second Motion to Dismiss for Lack of Personal Jurisdiction and Memorandum in Support, filed February 12, 2016, [Doc. 22], is granted. Plaintiff's claims against Defendant USA Nutra are dismissed without prejudice.

Dated this 20 day of December, 2016.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

Cassandra R. Malone, et al.                Justin D. Rodriguez, et al.
Keleher & McLeod, P.A.                     Atkinson, Thal & Baker, P.C.
*Attorney for Plaintiff Lynn Davis*        *Attorneys for USA Nutra Labs*