# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

LYNN DAVIS,

       Plaintiff,

v.                                        CV 15-1107 MV/SCY

USA NUTRA LABS, a Georgia
Company, and GROUPON, INC.,
a Delaware Corporation,

       Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant Groupon Goods Inc.'s Motion to

Compel Arbitration and Stay Proceedings [Doc. 24].    The Court, having considered the motion,

briefs, and relevant law, and being otherwise fully informed, finds that the Motion is well-taken

and will be granted.

## BACKGROUND

In December 2013, Plaintiff Lynn Davis received email advertisements from Defendant

Groupon Goods, Inc. ("Groupon") promoting Garcinia Cambogia, a weight loss product.    Doc.

1 at ¶ 7.    On or about December 6, 2013, Plaintiff ordered three bottles, or a three-month

supply, of Garcinia Cambogia tablets through Groupon's website.    Id. at ¶ 9.

According to the evidence submitted by Groupon, before placing her order, Plaintiff was

required to create an account.    Doc. 24-1.    To create her account, Plaintiff was required to

click a box immediately to the left of the words, "I agree to the Terms of Use and Privacy

Statement."    Doc. 24-2.    Further, before finalizing her order, Plaintiff was required to click a

button that said "Complete Order."    Doc. 43-1 at ¶ 7.    Directly below the "Complete Order"

button was a sentence stating: "[b]y clicking 'Complete Order' I accept the Terms and Conditions and Privacy Policy." Doc. 24-4. The phrase "Terms and Conditions" contained a hyperlink that permitted the customer to access the Terms of Use by clicking on the phrase "Terms and Conditions." Doc. 43-1 at ¶ 9.

The version of Groupon's Terms of Use that was in effect on December 6, 2013, the date of Plaintiff's purchase of the Garcinia Gambogia tablets, was a 22-page document. The First page had a table of contents, with hyperlinks to each numbered-section, preceded by the following introduction:

> Welcome to the Groupon Site. In order to use our Site (as defined below), you must agree to our Terms of Use – The Terms of Use are our "rules of the road" – they are important and contain many legal disclosures that you should read carefully – including terms of sale that apply when you buy something through the Site and terms specifying permissible uses of the Site. If you have any questions about these Terms of Use, contact us here.

Doc. 24-3 at 1. Section 18 of the document was titled, "Arbitration," and provided as follows:

> We will make every reasonable effort to resolve any disagreements that you have with Groupon. If those efforts fail, by using this Site you agree that any claim, dispute, or controversy you may have against Groupon arising out of, or relating to, or connected in any way with this Agreement this Site or the purchase or sale of any voucher(s), shall be resolved exclusively by final and binding arbitration administered by the American Arbitration Association ("AAA") and conducted before a single arbitrator pursuant to the applicable Rules and Procedures established by AAA ("Rules and Procedures"). You agree further that: (a) the arbitration shall be held at a location determined by AAA pursuant to the Rules and Procedures (provided that such location is reasonably convenient for you), or at such other location as may be mutually agreed upon by you and Groupon; (b) the arbitrator shall apply Illinois law consistent with the Federal Arbitration Act and applicable statutes of limitations, and shall honor claims of privilege recognized at law; (c) there shall be no authority for any claims to be arbitrated on a class or representative basis; arbitration can decide only your and/or persons or parties who may be similarly situated; (d) in the event that you are able to demonstrate that the costs of arbitration will be prohibitive as compared to the costs of litigation, Groupon will pay as much of your filing and hearing fees in connection with the arbitration as the arbitrator deems necessary to prevent the arbitration from being cost-prohibitive; and (e) with the exception of subpart (c) above, if any part of this arbitration provision is deemed to be invalid,

unenforceable or illegal, or otherwise conflicts with the Rules and Procedures established by AAA, then the balance of this arbitration provision shall remain in effect and shall be construed in accordance with its terms as if the invalid, unenforceable, illegal or conflicting provision were not contained therein. If, however, subpart (c) is found to be invalid, unenforceable or illegal, then the entirety of this Arbitration Provision shall be null and void, and neither you nor Groupon shall be entitled to arbitrate their dispute.

Doc. 24-3 at 20.

Plaintiff received the tablets that she had ordered, and began taking them in late January or early February 2014. Doc. 1 at ¶ 11. In March, she began to feel ill and stopped taking the tablets. Id. at ¶ 12. Thereafter, in May 2014, Plaintiff was hospitalized and found to have nearly no liver function. Id. at ¶¶ 17-18. Ultimately, Plaintiff needed a liver transplant, which she received in June 2014, at the Mayo Clinic Hospital in Phoenix, Arizona. Id. at ¶¶ 18, 19. The Mayo Clinic Hospital determined that the Garcinia Cambogia tablets were the probable cause of Plaintiff's acute liver failure. Id. at ¶ 20.

As a result, Plaintiff commenced the instant action against, *inter alia*, Groupon, alleging claims of strict liability for defective product, strict liability for failure to warn, negligence, and unfair trade practices. Id. at ¶¶ 25-49. Plaintiff also seeks punitive damages based on her claims. Id. at ¶¶ 50-51.

Groupon filed the instant motion to compel arbitration and stay proceedings, arguing that Plaintiff agreed to Groupon's terms of service, and that those terms of service require arbitration of the dispute in this action. Plaintiff opposes Groupon's motion, arguing that no valid arbitration agreement exists, and that even if there is a valid arbitration agreement, her claims are outside the scope of any such agreement.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to arbitration provisions in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Under the FAA, such arbitration provisions "are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 of the FAA creates "a substantive rule applicable in state as well as federal courts." *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984). To implement this substantive rule, "a party may apply to a federal court for a stay of the trial in an action 'upon any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. Describing the FAA as "a liberal federal policy favoring arbitration," the Supreme Court has emphasized "the fundamental principle that arbitration is a matter of contract," and, accordingly, that "courts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *AT&T Mobility LLC v. Conception*, 131 S. Ct. 1740, 1745 (2011).

The FAA, however, "was not enacted to force parties to arbitrate in the absence of an agreement." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1286 (10th Cir. 1997). Rather, Congress' concern "was to enforce private agreements into which parties had entered." *Id.* Accordingly, "[t]he existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." *Id.* at 1287. On a motion to compel arbitration, the district court's role is to determine (1) whether the parties have entered into a valid agreement to arbitrate, and (2) whether the dispute in question falls within the scope of that agreement. *See Keena v. Groupon*, 192 F. Supp. 3d 630, 634 (W.D.N.C. 2016); *Cordas v. Uber Tech., Inc.*, 228 F. Supp. 3d 985, 988 (N.D. Cal. 2017).

**DISCUSSION**

Under Section 3 of the FAA, Groupon moves to compel Plaintiff to arbitrate her claims against it.    In support of its motion, Groupon argues that its Terms of Use, to which Plaintiff agreed when completing her purchase of Garcinia Cambogia, contains a valid and binding arbitration provision, and that Plaintiff's claims fall squarely within the scope of that provision. Groupon further requests that the Court stay Plaintiff's claims against it pending resolution of the arbitration, or alternatively, dismiss the instant case in its entirety.    Plaintiff opposes Groupon's motion to compel, arguing that no valid agreement to arbitrate exists because: (1) the undisputed evidence does not establish that the parties entered into an arbitration agreement; and (2) the purported arbitration agreement is unconscionable and thus unenforceable under New Mexico law.    Plaintiff further argues that her claims do not bear a reasonable relationship to the subject matter of Groupon's Terms of Use, and thus do not fall within the scope of the purported arbitration agreement.

I.      A Valid Arbitration Agreement Exists Between the Parties.

      A.      The Parties Entered into an Agreement to Arbitrate.

Plaintiff's first argument against arbitration is that she never agreed to Groupon's Terms of Use and, consequently, never agreed to the arbitration provision included in those Terms of Use.    The Court "'appl[ies] ordinary state-law principles that govern the formation of contracts to determine whether a party has agreed to arbitrate a dispute.'"    *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 612 (10th Cir. 2014) (quoting *Walker v. BuildDirect.com Techs., Inc.*, 733 F.3d 1001, 1004)).[1]  Where the parties dispute the existence of an arbitration agreement, "a court

---

[1]  Plaintiff relies on New Mexico law in her opposition to Groupon's motion.    In its reply, Groupon argues that Illinois law applies, because the arbitration provision in its Terms of Use contains a choice of law provision applying Illinois law.    The Court analyzes the relevant issues

may grant a motion to compel arbitration if there are no genuine issues of material fact regarding the parties' agreement." *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012) (citations omitted). The court "should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Id.* On a motion to compel arbitration, the moving party "bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement; if it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement." *Bellman*, 563 F. App'x at 612.

Here, Plaintiff was presented with Groupon's Terms of Use, including the arbitration provision in dispute, as a "clickwrap" agreement – an agreement that "appears on an internet webpage and requires that a user consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with the internet transaction." *Feldman v. Google, Inc.*, 513 F. Supp. 3d 229, 236 (E.D. Pa. 2007); *see also Hancock*, 701 F.3d at 1255. To create her account, Plaintiff was required to affirmatively click a box acknowledging awareness and acceptance of Groupon's Terms of Use and Privacy Statement. Again, before completing her order, Plaintiff was required to affirmatively click a box acknowledging awareness and acceptance of Groupon's Terms of Use. Specifically, in order to complete her purchase, Plaintiff was required to click a button that said "Complete Order," directly below which was a sentence stating: "[b]y clicking 'Complete Order' I accept the Terms and Conditions and Privacy Policy." The phrase "Terms and Conditions" contained a hyperlink that allowed Plaintiff, by clicking on that phrase, to access the Terms of Use.

"To determine whether a clickwrap agreement is enforceable, courts presented with the

---

under both New Mexico and Illinois law.

issue apply traditional principles of contract law and focus on whether the plaintiffs had reasonable notice of and manifested assent to the clickwrap agreement." *Feldman*, 513 F. Supp. 2d at 236; *see also Hancock*, 701 F.3d at 1256 ("Courts evaluate whether a clickwrap agreement's terms were clearly presented to the consumer, the consumer had an opportunity to read the agreement, and the consumer manifested an unambiguous acceptance of the terms."). This standard is consistent with both New Mexico law and Illinois law, which require a showing of "mutual assent" in order for a contract to be enforceable. *See Flemma v. Halliburton Energy Servs., Inc.*, 303 P.3d 814, 822 (N.M. 2013) ("For a contract to be legally valid and enforceable, it must be factually supported by an offer, an acceptance, consideration, and mutual assent."); *Tassell v. United Mktg. Group, LLC*, 795 F. Supp. 2d 770, 789 (N. D. Ill. 2011) ("[I]n order to be binding, a contract requires a meeting of the minds and a manifestation of mutual assent."). "Clickwrap agreements are increasingly common and have routinely been upheld." *Hancock*, 701 F.3d at 1256 (citation omitted). Notably, "[f]ederal courts have consistently enforced clauses contained in clickwrap agreements" similar to the one at issue here, where the agreement is "presented via a hyperlink to a page separate from the one containing the box or button manifesting assent." *Bassett v. Elec. Arts Inc.*, No. 13-CV-04208, 2015 WL 1298644, at *4 (E.D.N.Y. Feb. 9, 2015) (collecting cases); *see also Whitt v. Prosper Funding LLC*, 15-CV-136, 2015 WL 425062, at *5 (S.D.N.Y. July 14, 2015) (enforcing arbitration clause where terms of agreement were viewable only by following a conspicuous hyperlink); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 840-41 (S.D.N.Y. 2012) (enforcing a forum selection clause that could be viewed only by following a hyperlink and reasoning that "[a] reasonably prudent offerree would have noticed the link and reviewed the terms before clicking on the acknowledgment icon"); *Swift v. Zynga Game Network, Inc.,* 805 F. Supp. 2d 904, 908, 912 (N.D. Cal. 2011) (arbitration

clause enforceable where user clicked on button marked "accept," below which was statement in small gray font indicating that clicking on the button meant accepting the hyperlinked "terms of service").

Plaintiff does not argue, and there is no basis to find, that the hyperlink to Groupon's Terms of Use was insufficiently conspicuous. A reasonably prudent internet user would have known of the existence of the terms in Groupon's Terms of Use, which were viewable through the hyperlink. *See Whitt*, 2015 WL 425062, at *5. Groupon thus has demonstrated that Plaintiff had reasonable notice of Groupon's Terms of Use, including the arbitration provision. Further, Groupon has demonstrated that, by clicking on the box acknowledging awareness and acceptance of Groupon's Terms of Use and Privacy Statement when creating her account, and again by clicking the "Complete Order" button before completing her purchase, Plaintiff indicated assent to the terms of Groupon's Terms of Use. Because "the requirements of an express contract for reasonable notice of terms and mutual assent [thus] are satisfied," Groupon has presented evidence sufficient to demonstrate the existence of an enforceable agreement. *Feldman*, 513 F. Supp. 2d at 238.

Plaintiff's contentions to the contrary are unavailing. First, while Plaintiff is correct that Groupon's counsel's arguments are not evidence, in reaching its decision, the Court is not relying upon Groupon's memoranda of law, but rather upon the evidence submitted therewith. And while Plaintiff argues that Groupon's exhibits are not properly authenticated, she provides no citation to the Federal Rules of Evidence, or any other authority, to support her position. Indeed, case law is to the contrary. *See, e.g.*, *Fteja*, 841 F. Supp. 2d at 834 (finding declarations filed by defendant's employees, screenshots of defendant's website, and defendant's current website sufficient to meet defendant's initial burden of demonstrating existence of parties'

agreement to forum selection clause). Groupon's evidence consists of screenshots, its Terms of Use in effect when Plaintiff created her account and made her purchase, and the Declaration of Seth Lochen, in which he provides testimony regarding, *inter alia*, the screenshots and Terms of Use. First, "[n]o original of the screenshots is required because they are not a writing, recording, or photograph." *Cordas*, 228 F. Supp. 3d at 989 (citing Fed. R. Evid. 1002). Indeed, "[i]t is difficult, if not impossible, to conceive of how an 'original' screenshot would be presented." *Id.* And to the extent that the screenshots require authentication, Lochen has authenticated them with his testimony from personal knowledge. *See Cordas*, 228 F. Supp. 3d at 989.

Further, under Rule 406 of the Federal Rules of Evidence, "[e]vidence of . . . an organization's routine practice may be admitted to prove that on a particular occasion the . . . organization acted in accordance with the . . . routine practice." *Hancock*, 701 F.3d at 1261 (citing Fed. R. Evid. 406). Such evidence is admissible "regardless of whether it is corroborated or whether there was an eyewitness." *Id.* (citing Fed. R. Evid. 406). Accordingly, Groupon can use Rule 406 routine-practice evidence – including its screenshots and Terms of Use – to show that Plaintiff was presented with and accepted Groupon's Terms of Use. *See Hancock*, 701 F.3d at 1262.

Finally, Lochen's declaration states that he is a "Sr. Engineering Manager" for Groupon, and that his statements are based on his familiarity with Groupon's Terms of Service, the process by which Groupon customers consent to the Terms of Use, and the purchase information for Plaintiff's purchase. Lochen's statements "are based on personal knowledge of the standard practice followed" when customers make purchases through the Groupon website. *Id.* at 1264. This evidence of Groupon's standard practice is "enough to raise an inference that the standard

practice was followed" when Plaintiff purchased the Garcinia Cambogia tablets from Groupon, "and shift[s] the burden to Plaintiff[] to raise a genuine factual dispute." *Id.*

In support of her argument that genuine disputes of material fact remain regarding the existence of an agreement, Plaintiff points to the testimony in her affidavit that: she "do[es] not recall specifically consenting to any particular terms and conditions to become a Groupon member, or ever reading any such terms or conditions;" "do[es] not recall specifically consenting to any particular terms and conditions to purchase the Garcinia Cambogia product from Groupon, or ever reading such terms or conditions;" and "do[es] not recall seeing any Groupon terms and conditions that pertained to arbitration or a limitation of liability," and if she "had seen such language, [she] would not have understood it to mean that [she] was waiving [her] right to a jury trial for any injury [she] might suffer from the Garcinia Cambogia." Doc. 25-1 at ¶¶ 7, 9-10. Courts routinely hold such failure of memory to be insufficient to invalidate a clickwrap agreement. *See Burcham v. Expedia*, No. 07CV1963, 2009 WL 586513 (E.D. Mo. Mar. 6, 2009) (plaintiff's denial that he ever saw or read terms of Expedia's online clickwrap agreement, which requires user to specifically assent to terms of use before proceeding further, insufficient to invalidate agreement); *Zaltz v. JDATE*, 952 F. Supp. 2d 439, 451-51 (E.D.N.Y. 2013) (fact that plaintiff did not remember agreeing to, and did not believe she agreed to, forum selection clause contained in defendant's terms of service insufficient to overcome evidence that in order to have obtained and maintained a JDate.com account, a user was required to click a box confirming that she had both read and agreed to website's terms and conditions); *Fteja*, 841 F. Supp. 2d at 834 (declarations filed by defendant's employees, screenshots of defendant's website, and defendant's current website, which indicated that potential members must agree to website's terms of service in order to join site, negated force of plaintiff's argument that he did

not remember agreeing to website's forum selection clause when he joined).

In the face of Groupon's evidence that Plaintiff could not have completed her purchase without clicking on the button accepting Groupon's Terms of Use, the fact that Plaintiff does not remember seeing, or agreeing to, Groupon's Terms of Use is insufficient to create a genuine dispute of material fact. *See Cordas*, 228 F. Supp. 3d at 990. Similarly, whether Plaintiff understood the meaning of Groupon's Terms of Use is immaterial, as a party who enters into a contract "is presumed to know the terms of the agreement, and to have agreed to each of its provisions." *Smith v. Price's Creameries, Div. of Creamland Dairies, Inc.*, 650 P.2d 825, 829 (N.M. 1982); *see also Hawkins v. Capital Fitness, Inc.*, 29 N.E.3d 442, 446 (Ill. App. Ct. 2015) ("An individual who has had an opportunity to read a contract before signing, but signs before reading, cannot later plead lack of understanding."). Accordingly, the Court finds that, as a matter of law, Plaintiff was on notice of Groupon's Terms of Use and assented to them in creating her Groupon account and in completing her purchase of the Garcinia Cambogia tablets. *See Cordas*, 228 F. Supp. 3d at 990. It follows that Plaintiff is bound by Groupon's Terms of Use, including the arbitration provision contained therein. *See id.*

B.      The Parties' Agreement to Arbitrate is Not Unconscionable.

Plaintiff next argues that the arbitration agreement in Groupon's Terms of Use is unenforceable because it is unconscionable. "Unconscionability is an equitable doctrine, rooted in public policy, which allows courts to render unenforceable an agreement that is unreasonably favorable to one party while precluding a meaningful choice of the other party." *Rivera v. Am. Gen. Fin. Servs., Inc.*, 259 P.3d 803, 816 (N.M. 2011) (citation omitted). "The doctrine of contractual unconscionability can be analyzed from both procedural and substantive perspectives." *Id.* at 816-17 (citation omitted); *Keena*, 192 F. Supp. 3d at 635 ("Under Illinois

law, 'unconscionability can be either 'procedural' or 'substantive' or a combination of both.'"). The party opposing arbitration bears the burden of demonstrating that unconscionability renders the contract unenforceable. *Strausberg v. Laurel Healthcare Providers, LLC*, 304 P.3d 409, 420 (N.M. 2013); *Hollingshead v. A.G. Edwards & Sons, Inc.*, 920 N.E.2d 1254, 1260 (Ill. App. Ct. 2009).

> 1.  Substantive Unconscionability

"Substantive unconscionability concerns the legality and fairness of the contract terms themselves, and the analysis focuses on such issues as whether the contract terms are commercially reasonable and fair, the purpose and effect of the terms, the one-sidedness of the terms, and other similar public policy concerns." *Rivera*, 259 P.3d at 817 (citation omitted); *Keena*, 192 F. Supp. 3d at 637 ("Substantive unconscionability refers to those terms which are inordinately one-sided in one party's favor."). Accordingly, "[a] contract provision is substantively unconscionable if it is grossly unreasonable and against [New Mexico's] public policy under the circumstances." *Rivera*, 259 P.3d at 817 (citation omitted); *Keena*, 192 F. Supp. 3d at 637 ("Factors that suggest a contract is substantively unconscionable include 'gross inequality in the bargaining positions of the parties, together with terms unreasonably favorable to the stronger party.'").

Plaintiff first argues that the arbitration provision in Groupon's Terms of Use is substantively unconscionable because it "would require Plaintiff to arbitrate 'any claim, dispute or controversy [she] may have against Groupon,' without imposing a reciprocal obligation upon Groupon to arbitrate any claims it may have against her." Doc. 35 at 9. The arbitration provision of Groupon's Terms of Use states in pertinent part:

> We will make every reasonable effort to resolve any disagreements that you have
> with Groupon. If those efforts fail, by using this Site you agree that any claim,

dispute, or controversy you may have against Groupon arising out of, or relating to, or connected in any way with this Agreement this Site or the purchase or sale of any voucher(s), shall be resolved exclusively by final and binding arbitration. . . . [I]f any part of this arbitration provision is deemed to be invalid, unenforceable or illegal, or otherwise conflicts with the Rules and Procedures established by AAA, then the balance of this arbitration provision shall remain in effect and shall be construed in accordance with its terms as if the invalid, unenforceable, illegal or conflicting provision were not contained therein.   If, however, subpart (c) is found to be invalid, unenforceable or illegal, then the entirety of this Arbitration Provision shall be null and void, and neither you nor Groupon shall be entitled to arbitrate their dispute.

Doc. 24-3 at 20.

Other than the last quoted sentence, which refers to disputes of both the customer and Groupon, this provision primarily addresses the customer's agreement to submit her claims to arbitration.   Nowhere, however, does the Terms of Use set forth a one-sided provision reserving to Groupon, either explicitly or implicitly, a non-arbitration option for its own claims.   *See Padilla v. State Farm. Mut. Auto. Ins. Co.*, 68 P.3d 901 (N.M. 2003) (striking down one-sided appeal provision that effectively allowed insurer, but not insured, to appeal arbitration decision to court); *Cordova v World Fin. Corp. of N.M.,* 208 P.3d 901 (N.M. 2009) (finding arbitration clause unenforceable where agreement contained a separate paragraph affording lender exclusive and unlimited alternative to seek any judicial remedies it might otherwise have available to it in law or in equity in event of default by borrower).   The Terms of Use thus contains no offending "escape hatch clause" that imposes a "self-serving arbitration scheme" on its customers, as did the contracts at issue in *Padilla* and *Cordova*.   *Padilla*, 68 P.3d at 906; *Cordova*, 208 P.3d at 910.   In any event, in order to avoid any "unconscionable result" while "preserv[ing] the parties' agreement to the greatest extent possible," the proper remedy under New Mexico law is not for this Court to invalidate the entire arbitration provision, but rather to

13

invalidate only any non-arbitration carve-out. *Padilla*, 68 P.3d at 907-09.

Accordingly, the Terms of Use "now contains a mutual agreement to binding arbitration." *Id.*

Illinois precedent does not dictate a different result: so long as a plaintiff receives consideration for her agreement to arbitrate, even where that agreement only covers her claims against the defendant, Illinois courts will enforce the defendant's arbitration provision. *Sherman v. AT&T Inc.*, No. 11C5857, 2012 WL 1021823, at *5 (N.D. Ill. Mar. 26, 2012); *Williams v. TCF Nat'l Bank*, No. 12C05115, 2013 WL 708123, at *11 (N.D. Ill. Feb. 26, 2013) ("Even if TCF could avoid arbitration while TCF customers could not, the parties do not have to bind themselves to identical obligations in order to avoid substantive unconscionability."). Here, Groupon offered Plaintiff its online service and products through that service, and also offered to pay a portion of her arbitration fees "to prevent arbitration from being cost-prohibitive." Doc. 24-3 at 20. Illinois courts would consider this to be adequate consideration for Groupon's Terms of Use, including its arbitration provision. *Sherman*, 2012 WL 1021823, at * 5 (citing *Tortoriello v. Gerald Nissan of N. Aurora, Inc.*, 882 N.E.2d 157 (Ill. App. Ct. 2008) ("where the promise to arbitrate is part of a clause within a larger contract" and is supported by consideration, "the arbitration clause does not suffer for lack of mutuality of obligation"); *Boomer v. AT&T Corp.*, 309 F.3d 404, 419 (7th Cir. 2002) ("arbitration offers cost-savings benefits" that are "reflected in a lower cost of doing business that in competition are passed along to customers")).

Plaintiff further argues that the arbitration provision in Groupon's Terms of Use is substantively unconscionable because "Groupon has reserved 'the right at all times to

discontinue or modify any part of" the Terms of Use at its sole discretion."   Doc. 35 at 9.

Groupon's Terms of Use contains the following provision, entitled "Modification of this

Agreement":

> We reserve the right at all times to discontinue or modify any part of this
> Agreement as we deem necessary or desirable. . . . If you have an account on the
> Site, any changes to these Terms of Use will be effective upon the earlier of our
> dispatch of an email notice to you or our posting of notice of the changes on our
> Site, provided that, these changes will not apply to vouchers purchased prior to
> the effective date of such changes.   These changes will be effective immediately
> for new and existing users of our Site and for all vouchers purchased after the
> effective date of the change. . . .

Doc. 24-3 at 14.

This modification provision is separate and distinct from the challenged

arbitration provision.   Where, as here, the enforceability of an arbitration provision is at

issue, "a party's challenge to another provision of the contract, or to the contract as a

whole, does not prevent a court from enforcing a specific agreement to arbitrate."

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010).   Accordingly, "a

provision permitting the unilateral amendment of any term of contract does not, without

more, render a separate provision, such as an arbitration provision, unenforceable."

*Paduana v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 417 (E.D.N.Y. 2014).

Moreover, any concerns that the modification provision renders the arbitration

agreement "unreasonably one-sided" are dispelled by the fact that the Terms of Use does

not purport to render modifications retroactively applicable to disputes arising from

purchases made through its website prior to the modification date.   *Flemma*, 303 P.3d at

821-22 (finding unconscionable employment contract that allowed employer to

unilaterally make changes retroactively applicable to already-accrued employee claims);

*Williams*, 2013 WL 708123, at *10.   Specifically, the modification provision indicates

that any "changes will not apply to vouchers purchased prior to the effective date of such

changes," but rather will apply only to "all vouchers purchased after the effective date of

the change."   Doc. 24-3 at 14.   Accordingly, if a customer seeks to invoke arbitration

of a dispute arising from her use of the Groupon website, the modification provision

would not permit Groupon to unilaterally change the Terms of Use after that customer

has completed her purchase and apply those changes to the customer's dispute.   Unlike

the modification provision found unconscionable in *Flemma*, the modification provision

here does not allow Groupon to "change the rules of the game just before it starts," and

thus provides no basis for a finding of unconscionability.   *Flemma*, 303 P.3d at 822;

*Williams*, 2013 WL 708123, at *10.

## 2.    Procedural Unconscionability

Procedural unconscionability concerns "the particular factual circumstances surrounding

the formation of the contract, including the relative bargaining strength, sophistication of the

parties, and the extent to which either party felt free to accept or decline terms demanded by the

other."   *Rivera*, 259 P.3d at 817; *Keena*, 192 F. Supp. 3d at 635 ("Procedural unconscionability

refers to a situation where a term is so difficult to find, read, or understand that the plaintiff

cannot fairly be said to have been aware he was agreeing to it.").   In support of her procedural

unconscionability argument, Plaintiff states that Groupon's Terms of Use is an adhesion contract

because it: (1) contains a set of standardized terms prepared by Groupon; (2) was offered by

Groupon to its members through a clickwrap process on a take-it-or-leave-it basis, without an

opportunity for bargaining; and (3) persons who want to do business with Groupon cannot avoid

accepting these terms.   Doc. 35 at 10.   According to Plaintiff, because Groupon's Terms of

16

Use is an adhesion contract, the arbitration provision contained therein is procedurally unconscionable. *Id.*

Plaintiff is correct that, when determining whether a contract is procedurally unconscionable, the Court should consider whether the contract is one of adhesion: "a standardized contract offered by a transacting party with superior bargaining strength to a weaker party on a take-it-or-leave-it basis, without opportunity for bargaining." *Id.* (citation omitted); *Kinkel v. Cingular Wireless, LLC*, 857 N.E.2d 250, 266 (Ill. 2006) (in a contract of adhesion, "the terms . . . are nonnegotiable and presented in fine print in language that the average consumer might not fully understand."). Adhesion contracts, however, "or take-it-or-leave-it contracts, have become the norm, and the disparity in bargaining power that results from these contracts is not considered sufficient to render them unconscionable." *Keena*, 192 F. Supp. 3d at 637; *Padilla*, 68 P.3d at 907 n.3 (the fact that a contract is one of adhesion is not sufficient to invalidate it as procedurally unconscionable). Rather, an adhesion contract will be found unconscionable only if the "terms [therein] are patently unfair to the weaker party." *Rivera*, 259 P.3d at 817; *Williams*, 2013 WL 708123, at *9 ("[C]ontracts of adhesion are a fact of modern life and the lack of negotiation over the arbitration provision does not, standing alone, establish procedural unconscionability.").

Here, while Groupon's Terms of Use "appears to be a standardized contract and thus satisfies the first element of an adhesion contract," Plaintiff has not demonstrated either that Groupon "had a superior bargaining position," or that Plaintiff had no opportunity to negotiate. *Thompson v. THI of N.M. at Casa Arena Blanca, LLC*, No. 05-1331, 2006 WL 4061187, at *13-14 (D.N.M. Sept. 12, 2006). A party has a superior bargaining position when "the weaker party virtually cannot avoid doing business under the particular contract terms." *Id.* at *13.

Plaintiff neither argues nor demonstrates that there was no other seller from which she could have purchased Garcinia Cambogia tablets. *Id.* Further, Plaintiff has made no showing that Groupon "did not afford [her] an opportunity to negotiate, or that [she] attempted to negotiate and was rebuffed." *Thompson*, 2006 WL 4061187, at *14.

Similarly, Plaintiff has pointed to no impropriety during the creation of her Groupon account or her purchase through Groupon's website that deprived her of meaningful choice – "nothing indicates that she was incapable of understanding the arbitration clause or that [Groupon] used 'sharp practices or high pressure tactics'" to secure her consent to the Terms of Use. *THI of N.M. at Hobbs Center, LLC v. Spradlin*, 532 F. App'x 813, 818 (10th Cir. 2013) (citation omitted). To the contrary, as discussed above, the evidence demonstrates that Plaintiff had reasonable notice of Groupon's Terms of Use, including the arbitration provision, and that, by clicking on the box acknowledging awareness and acceptance of Groupon's Terms of Use and Privacy Statement when creating her account, and again by clicking the "Complete Order" button before completing her purchase, Plaintiff indicated assent to the terms of Groupon's Terms of Use. *See Keena*, 192 F. Supp. 3d at 636. Thus, Plaintiff has failed to establish that Groupon's Terms of Use was a contract of adhesion.

Assuming *arguendo* that the Terms of Use was a contract of adhesion, Plaintiff has failed to demonstrate that the terms of the parties' agreement were "patently unfair" to her. Plaintiff contends that the arbitration provision "amounts to her agreement to surrender her right to a jury trial in exchange for nothing more than the opportunity to buy a product from Groupon." Doc. 25 at 10. This contention, however, suggests only that the consideration provided by the respective parties was not of equivalent value. While "a valid contract requires mutuality of obligation," the requirement of mutuality "does not require that the consideration provided by

both parties be identical." *Ruegsegger v. W. N.M. Univ. Bd. of Regents*, 153 P.3d 681, 686 (N.M. Ct. App. 2006); *Williams*, 2013 WL 708123, at *11 ("In Illinois, mutuality of obligation is not essential as long as there is valid consideration."). Accordingly, Plaintiff fails to meet her burden of establishing that either the Terms of Use, or the arbitration provision contained therein, was patently unfair to Plaintiff.

II.    Whether Plaintiff's Claims are Subject to Arbitration is for the Arbitrator to Decide.

Citing *Clay v. N.M. Title Loans, Inc.*, 288 P.3d 888 (N.M. Ct. App. 2012), Plaintiff argues that her claims do not fall within the scope of the arbitration agreement, because they are not reasonably related to the subject matter of Groupon's Terms of Use. Doc. 35 at 6-8. "[T]he arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate the dispute." *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1280 (10th Cir. 2017). So too, however, does the question of "who has the primary power to decide arbitrability turn[] upon what the parties agreed about *that* matter." *Id.* (emphasis in original). "When parties agree that an arbitrator should decide arbitrability, they delegate to an arbitrator all threshold questions concerning arbitrability – including 'whether their agreement covers a particular controversy.'" *Id.* (quoting *Rent-A-Center*, 561 U.S. at 68-69 (2010)).

Questions of arbitrability thus "encompass two types of disputes: (1) disputes about *whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement; and (2) threshold disputes about *who should have the primary power to decide* whether a dispute is arbitrable." *Id.* (citations omitted; emphasis in original). The second type of dispute – who should decide arbitrability – necessarily precedes the question of whether a dispute is arbitrable. *Id.* at 1281. Accordingly, courts must begin by addressing the issue of who should decide the arbitrability of Plaintiff's claims. *Id.* When addressing this

issue – "that is, when courts decide whether a party has agreed that *arbitrators* should decide arbitrability – courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Id.* (citations omitted; emphasis in original).

In *Belnap*, the parties' agreement contained an arbitration provision that included the following language: "The arbitration shall be administered by JAMS and conducted in accordance with its Streamlined Arbitration Rules and Procedures (the "Rules"), except as provided otherwise herein." *Id.* at 1276. In turn, JAMS Rule 8(c) provides:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted and ruled on by the Arbitrator. *The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.*

*Id.* at 1281 (emphasis added). The Court found that the "plain language" of the parties' agreement established "the JAMS Rules as the default controlling rubric," and as a result, concluded that the parties "incorporated the JAMS Rules into their Agreement." *Id.* at 1282, 1283.

Based on its conclusion that the parties incorporated the JAMS Rules into their agreement, the Court determined that the parties "clearly and unmistakably agreed to submit arbitrability issues to an arbitrator, including disputes over the interpretation or scope of the agreement under which arbitration was sought." *Id.* at 1284. Because the parties "clearly and unmistakably agreed to arbitrate arbitrability," the Court further held that "the district court erred when it determined the arbitrability of [the plaintiff's] claims instead of deferring that determination to an arbitrator." *Id.* Thus, under *Belnap*, "when the parties clearly and unmistakably agree[] to arbitrate arbitrability, all questions of arbitrability – including the

question of whether the claims fall within the scope of the agreement to arbitrate – [must] be resolved by an arbitrator."   *Id.*

In the instant case, the arbitration provision in Groupon's Terms of Use states in relevant part that any claim, dispute or controversy:

> arising out of, relating to, or connected in any way with this Agreement this Site or the purchase or sale of any voucher(s) shall be resolved exclusively by final and binding arbitration administered by the American Arbitration Association ("AAA") and conducted before a single arbitrator *pursuant to the applicable Rules and Procedures established by AAA* ("Rules and Procedures").

Doc. 24-3 at 20 (emphasis added).    In turn, AAA Rule 7, which is substantively identical to JAMS Rule 8(c), states that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."    AAA, Commercial Arbitration Rules and Mediation Procedures ¶ R-7(a) (2013).

As *Belnap* instructs, by including in the arbitration agreement specific language indicating that the AAA Rules apply to the arbitration of any disputes between the parties, the parties established the AAA Rules "as the default controlling rubric," and as a result, "incorporated the AAA Rules into their agreement."    *Belnap*, 844 F.3d at 1282, 1283.    And because the AAA Rules give the arbitrator the power to rule on issues including the scope of the arbitration agreement and the arbitrability of the parties' claims, the parties here "clearly and unmistakably agreed to submit arbitrability issues to an arbitrator, including disputes over the interpretation or scope of the agreement under which arbitration was sought."    *Id.* at 1284.

The fact that the agreement in the instant case incorporates the AAA Rules, while the agreement at issue in *Belnap* incorporated the JAMS Rules, is of no moment.    The AAA Rules and the JAMS Rules contain substantively identical provisions designating the arbitrator as the

person to determine questions of arbitrability.    Indeed, in confirming the "soundness" of its

determination, the Court in *Belnap* explained that, "in an analogous context, all of our sister

circuits to address the issue have unanimously concluded that incorporation of the substantively

identical (as relevant here) AAA Rules constitutes clear and unmistakable evidence of an

agreement to arbitrate arbitrability."    *Id.* at 1283 (citing *Brennan v. Opus Bank*, 796 F.3d 1125,

1130 (9th Cir. 2015) (observing that "[v]irtually every circuit to have considered the issue has

determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable

evidence that the parties agreed to arbitrate arbitrability"); *Fallo v. High-Tech Inst.*, 559 F.3d

874, 878 (8th Cir. 2009) ("Most of our sister circuits that have considered this issue agree with

our conclusion that an arbitration provision's incorporation of the AAA Rules . . . is a clear and

unmistakable expression of the parties' intent to reserve the question of arbitrability for the

arbitrator and not the court."); *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11 (1st Cir. 2009)

(stating that incorporation of the AAA Rules "is about as 'clear and unmistakable' as language

can get")).

Nor do the particular circumstances of this case – Plaintiff's agreement to arbitrate was

manifested only through her online consent to Groupon's Terms of Use, and thus to its

arbitration provision, by clicking on a button in order to complete her purchase order – alter this

analysis.    In a similar case, *Cordas v. Uber Technologies, Inc.*, the court found that the plaintiff,

by setting up an online account and assenting to Uber's terms and conditions in order to

complete his account setup, had agreed to the arbitration provision contained in Uber's terms and

conditions.    228 F. Supp. 3d 985, 990-91 (N.D. Cal. 2017).    The arbitration provision

contained in Uber's terms and conditions specifically incorporated the AAA Rules.    *Id.* at 991.

Citing "the clear weight of authority . . . enforcing arbitrability delegation via incorporation of

the AAA rules, . . . regardless of the sophistication of the parties," the court concluded that Uber's terms and conditions, by incorporating the AAA rules into their arbitration provision, showed "the parties' clear and unmistakable intent to delegate arbitrability questions to an arbitrator." *Id.* at 991-92. Accordingly, the court held that "[b]ecause the parties agreed to arbitration, and agreed to delegate questions of arbitrability to an arbitrator, the remaining questions of whether the arbitration agreement is valid and whether it encompasses this dispute are delegated to an arbitrator." *Id.* at 992.

In a similar fashion, the parties here clearly and unmistakably agreed to arbitrate arbitrability. Accordingly, all questions of arbitrability – including the question Plaintiff raises as to whether her claims reasonably relate to the subject matter of the parties' agreement to arbitrate – must be resolved by an arbitrator. Under *Belnap*, this Court has no discretion to decide whether Plaintiff's claims are outside the scope of the arbitration provision in Groupon's Terms of Use, but rather must defer that determination to the arbitrator.

III.    This Court Must Stay the Instant Proceedings.

"Regarding a suit brought in federal court 'upon any issue referable to arbitration under an agreement in writing for such arbitration,' the [FAA] provides the district court 'shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.'" *Adair Bus Sales v. Blue Bird Corp.*, 25 F.3d 953, 955 (10th Cir. 1994) (quoting 9 U.S.C. § 3). In its motion, Groupon moves this Court for a stay pending arbitration. "The proper course, therefore," is for this Court to grant Groupon's motion and stay the action pending arbitration. *Id.*

## CONCLUSION

The undisputed facts demonstrate that the parties entered into an agreement to arbitrate. That agreement is not unconscionable under either New Mexico law or Illinois law.    The undisputed facts further demonstrate that the parties agreed that it is for the arbitrator, not this Court, to determine whether Plaintiff's claims fall within the scope of their agreement to arbitrate.    Having found that the issues in this case should be referred to arbitration, the proper course is for this Court to stay the action pending arbitration.

**IT IS THEREFORE ORDERED** that Defendant Groupon Goods Inc.'s Motion to Compel Arbitration and Stay Proceedings [Doc. 24] is **GRANTED** as follows: : (1) Groupon's request for an order compelling arbitration of Plaintiff's claims is **GRANTED**; (2) this Court **ORDERS** Plaintiff to arbitrate the claims asserted in this action against Groupon in accordance with the terms of the arbitration provision in Groupon's Terms of Use; and (3) Groupon's request for an order to stay this lawsuit pending the completion of arbitration is **GRANTED.**

DATED this 28th day of March, 2018.

_____
MARTHA VÁZQUEZ
United States District Judge